## WILLIAMS *et al.* v. SEALE.

Where a mercantile partnership came into possession of real estate as partnership assets, and one of the firm rented the same to a tenant; and where, after the expiration of the term of tenancy, such partner instituted proceedings to dispossess the tenant on account of his refusing to deliver possession after the expiration of his term ; and where such proceedings were arrested by the tenant upon the ground that, after the termination of his rent contract, he had bought the land by verbal agreement from the other member of the firm who was the managing partner, had paid the firm a part of the purchase-money therefor, and was in possession, not as a tenant holding over, but as a purchaser, it was error for the court to charge the jury as follows: "One man can not sell another man's land, unless he is authorized to do so. He would be compelled to show the authority to sell the land. He would have to show a power of attorney to sell it, an instrument in writing, and executed in the same way that a deed is." A dispossessory warrant will not lie against one who holds land under such an agreement, although the partner making the contract of sale had no written power of attorney to sell from his copartner.

Submitted February 15, — Decided March 25, 1898.

Warrant to dispossess.    Before Judge Gober.    Milton superior court.    February term, 1897.

*J. P. Brooke*, for plaintiffs in error.
*T. L. Lewis*, contra.

LEWIS, J.    This was a proceeding under section 4813 of the Civil Code, instituted on January 7, 1894, by M. J. Seale to remove John F. Williams and Theodosia Williams as tenants holding over; plaintiff stating in his affidavit that he had rented the land to them for the year 1896, that their term had expired, and they had refused to deliver possession.    The defendants, in their counter-affidavit, claimed that they occupied the land under a contract of purchase, and not under a contract of rental.    On the trial of the case, plaintiff's evidence was substantially as follows: The land in question originally belonged to John F. Williams, who conveyed it to the Equitable Mortgage Company to secure a debt.    In March, 1893, John F. Williams, one of the defendants, having become indebted to a firm consisting of plaintiff and his son H. I. Seale for goods bought of them in the course of their mercantile business, in order to secure this indebtedness transferred the bond for titles given him by the Equitable Mortgage Company to the plaintiff.    After that the plaintiff agreed to take the place and pay off the loan due the Equitable Mortgage Company.    Mrs. Theodosia Williams then rented the land from plaintiff for the year 1894, and also rented the same for the next year, 1895.    In the fall of 1895 plaintiff paid off the loan due the mortgage company, and got a deed from it to himself. No contract of rent was made with the defendants for the year 1896.    About January 1, 1896, they came into the store of plaintiff and his son, with a view of fixing papers in accordance with an agreement to purchase the land which they claimed to have made with the son, H. I. Seale.    Plaintiff refused to carry out this alleged contract, and defendants left, claiming that they had bought the land.    Since January 1, 1896, plaintiff bought his son's interest in the land, which before that time they had owned jointly, although the deed was made to plaintiff alone.    Theodosia Williams bargained a portion of the

land to one Anderson Wood for $300.00. H. I. Seale wrote the deed from his father to Theodosia Williams to this land, who in turn conveyed the same to said Wood. The $300.00 thus paid was received by the firm, plaintiff claiming that it was applied toward the indebtedness of the mortgage company which he had previously taken up. The son, H. I. Seale, was the business manager of the store, and through all the negotiations as to the land in controversy he represented the store's interest; the plaintiff in this case never having negotiated any of the transactions from first to last with the defendants. Plaintiff claimed that his son was not authorized to sell this land. The son admitted a conditional trade made with the defendants, whereby he agreed to sell them the land, but said the condition was never complied with.

The testimony for the defendants made the following case: They never rented the land involved in the suit, for the year 1896, from any one; but they remained thereon during this year under a contract of purchase made by Theodosia Williams with H. I. Seale. In 1893 J. F. Williams transferred his bond for titles from the mortgage company to secure his indebtedness to the store; did not know at the time that the transfer was made to M. J. Seale alone instead of the firm. Afterwards the firm agreed to take up the loan, pay it off and buy the land. Acting upon this agreement Theodosia Williams rented the land for the years 1894 and 1895. In the fall of 1895 H. I. Seale came to defendants' house, and proposed to let Theodosia Williams have the land at a stipulated sum payable in instalments. The proposition was accepted by her. After this, upon the faith of that contract, she procured a purchaser, Wood, for a part of the land, who paid therefor $300.00, which was applied to the Equitable Mortgage Company debt, and a deed to this portion was executed by the plaintiff to Theodosia Williams, and by her to Wood, as testified to by the plaintiff. In January, 1896, defendants went to plaintiff's store and told H. I. Seale and his father that they desired to have the papers fixed up in accordance with the contract of sale by H. I. Seale. The plaintiff, after a conference with his son, came back and told defendants he did not wish to sell the

land according to the contract made by his son, and the defendant, Theodosia Williams, said that she had already bought. it, and paid $300.00 on it. Then H. I. Seale called defendants aside and told them to remain upon the land, and that he would satisfy his father about the matter. They accordingly remained on the land during the year 1896, under the aforesaid contract of purchase.

There was a verdict for the plaintiff, and for $50.00 rent for the year 1896. The defendants made a motion for a new trial, alleging, among other grounds, error in the following charge of the court to the jury: "One man can not sell another man's land, unless he is authorized to do so. He would be compelled to show the authority to sell the land. He would have to show a power of attorney to sell it, an instrument in writing, and executed in the same way that a deed is." The motion for new trial was overruled, and the defendants excepted.

From the above statement of facts it will be seen that when this land was acquired in 1893, it was really received in payment of a debt due by John F. Williams to a mercantile firm consisting of plaintiff and his son. While the title from the mortgage company was made to only one member of the firm, namely the father, it was admitted on the trial of the case that the land constituted assets of the firm; and we think clearly, under the facts, that the member of the firm who held the paper title really held the land as assets of the firm, and in trust for the members thereof. It will be noted that the absolute title was acquired by plaintiff, divested of any such trust, some time after January, 1896, in a trade made between the father and the son. Therefore, during these entire transactions relating to the rental and sale of the land, the property really constituted a part of the assets of these copartners in their business. This being the case, the son had as much right to make a contract of sale as the father had to make the contract of rental; especially in view of the fact that the former was the managing partner. Besides this, there was testimony sufficient in the case from which the jury might have inferred that this contract was really ratified by the father, who received the benefit of the $300.00 cash paid upon the contract of sale. It is true this

contract of purchase and sale was a verbal one, but there was a sufficient part performance thereof to take it out of the statute of frauds. Even if there was not, we are not prepared to hold that if a party goes into possession of land under a contract of sale, though the contract be voidable on account of the statute of frauds, he could, for this reason, be treated as a tenant holding over.

The dispossessory warrant in this case is based upon the idea that the defendants were tenants holding over beyond the term of their contract of rental, and hence their possession was without the color of authority, and not even permissive. In view of the facts in this case, we think the charge of the court complained of was clearly error. We presume the court treated this case upon the idea that at the time of the alleged contract of purchase the property was owned absolutely by the plaintiff. Even under this theory, we think his charge was misleading. It is true that an act creating an agency must be executed with the same formality as the law prescribes for the execution of the act for which the agency is created; but it does not follow from this that one can not give another verbal authority to sell land. The agent could not execute a deed to another for his principal without a written power of attorney executed with the same formality that the law requires in the making of deeds to realty. This charge was open to the objection, in the first place, that it assumed entire ownership of the land in the plaintiff; in the second place, it excluded from the jury the theory, that even if he was the entire owner, yet if he ratified a sale of the land made without his authority, by receiving a portion of the fruits ·of such sale, the contract was binding on him. Under this ruling of the court, the jury was forced to the conclusion that inasmuch as the managing partner, who made the contract of sale, did not have a written power of attorney from the other member authorizing such transaction, his contract was absolutely void. This excluded from the consideration of the jury the real contention of the defendants, to wit, that they were in possession of the land under a contract of sale, and not as tenants holding over beyond their term.

It is not necessary, in this opinion, to discuss the question

whether the managing partner in such a case as this has the right to sell the entire interest of the firm in the land without the consent, express or implied, of his copartner.   What we do decide is, that where a party, after his contract of rental with one of two partners or cotenants has terminated, remains in possession of the land under a contract of purchase from the other partner, he can not be dispossessed as a tenant holding over; especially if the partner suing out the dispossessory warrant has reaped a part of the benefits of the purchase.

*Judgment reversed.   All the Justices concurring.*